UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA    )
    )
           v.    )      DOCKET NO. 10-CR-10177-NMG
    )
ELVIS RAPOSO    )
    )

DEFENDANT'S SENTENCING MEMORANDUM

Elvis Raposo respectfully submits this memorandum of law in support of his proposed sentence of 18 months of imprisonment, followed by 2 years of supervised release.

I. Introduction

Elvis Raposo has accepted responsibility for his role in an attempted robbery. Unlike his co-defendants, Mr. Raposo had no involvement with the other robbery charged in the indictment. The government is recommending a sentence of 30 months.  Given his lack of prior criminal history, his success with and commitment to addressing his substance abuse issues, his record of gainful employment and good works, Mr. Raposo requests that the Court impose a sentence of 18 months for his uncharacteristic conduct in this case.

II. Sentencing Considerations

This Court should impose a sentence that is "sufficient, but not greater than necessary, to comply with" the statutory purposes of sentencing.  18 U.S.C. § 3553(a).  These purposes, and the other statutory factors the Court should consider, are set forth in § 3553(a), and include the following.

A. History and Characteristics of the Defendant

Born to poor but hard-working immigrant parents, Elvis had a difficult childhood.  PSR ¶

1

47-48. He experienced harsh discipline at the hands of his father, and was sexually abused.  PSR ¶ 48-49.

Despite these challenges, Elvis grew up to be a loving and reliable family member and friend. His sister Carla, who works at a law firm, considers Elvis her "best friend." PSR ¶ 57.  In an attached letter, she recalls a time when she faced the prospect of dropping out of community college for financial reasons.  Although she was working full-time, she could no longer afford the tuition. When she mentioned this in passing to Elvis, who was working at Dunkin' Donuts, Elvis said, "There is no way you're going to stop now. I will give you the money for this semester." To this day, Carla recognizes the debt of gratitude she owes her brother, how his help with her school payments allowed her to secure employment at a family-friendly law firm that gives her the flexibility to be with her children.

Carla is married to Kevin Roscoe, a police officer. In an attached letter, he describes a time when Elvis was working for a moving company.  The Roscoes were moving to a new house.  The company for which Elvis worked was fully booked that day, so the Roscoes turned to another company. When that company canceled at the last minute, however, Elvis volunteered to help them move after finishing work. He even recruited some friends to help with the move. After working until 3 P.M. at his job, Elvis worked through then night to move the Roscoes into their new home in Saugus.

Jennifer Poor, who has known Elvis for fifteen years, describes him in an attached letter as "the kind of man that will give the shirt off his back." He is "amazing with children," showing exceptional patience.  Recently, when he was working at Honey Dew Donuts, Elvis took Ms. Poor's two children and their cousins to work.  He gave the children a demonstration and he

helped them make and decorate their own donuts.  In another letter, Jennifer's mother describes Elvis as "one of the hardest working people" she knows, a man with "a heart of gold" who would "do anything for anyone."

John Graham is the Superintendent of the Cambridge Police Auxiliary. (As described on the Cambridge Police Department website, the Auxiliary is a group of 40 volunteers who assist the police with such activities as traffic and crowd control at parades.) Graham, who has known Elvis most of Elvis's life, describes him as a "hard working, dedicated, and loving person" who is "very respectful."

Until his detention after the Rule 11 hearing, Elvis was working as a baker for Dunkin' Donuts. In an attached letter, his employer Sebastian Agabite describes Elvis as someone who "worked very hard" and was "a model employee." The employer is eager to re-hire Elvis upon the completion of his sentence.

Elvis acknowledges a lengthy battle with substance abuse, which began when he was only a teenager.  PSR ¶ 74-76.  Significantly, however, his arrest in this case resulted in a renewed commitment to addressing this problem. While it is important for anyone in his circumstances to begin by acknowledging the problem and committing to addressing it, Elvis has done more than just *say* that he wants to change his life and stop abusing substances.  Until his detention after the Rule 11 hearing, Elvis attended weekly sessions of both individual counseling and a relapse prevention group.  Katina Matheos, a therapist at Arbour Counseling Services, describes Elvis as "consistent in his participation" and as having "demonstrated motivation."  Liz Anderson, also a therapist, writes about Elvis's excellent attendance record and notes that he "appeared to be engaged at a high level and to support others in group."

Despite his substance abuse issues, and some experiences with the juvenile justice system, Elvis has not had any prior interactions with the criminal justice system, except for two minor traffic matters.  As Elvis is thirty-eight years old, this fact is a highly significant predictor of the likely course of his future conduct.  Combined with his determination to continue to abstain from drugs, his close emotional bonds, and his good employment prospects upon release, he stands before the court with an excellent chance not to be back again.

B. *Nature and Circumstances of the Offense*

Elvis has pleaded guilty to conspiracy and attempted robbery.  He was a passenger in a car with his two co-defendants.  Co-defendant Bartone drove to the Chelsea Post office, where Bartone got out of the car and looked around. PSR ¶ 10.  Bartone then drove to the Charlestown Post Office, which he circled a number of times. PSR ¶ 11.  At this point, a SWAT team stopped the car and arrested its occupants.  PSR ¶ 12.  By all indications, Elvis was pulled into the robbery scheme at the last minute.

While Elvis accepts full responsibility for his actions, two mitigating facts should be noted.  As the government has acknowledged, there is absolutely no reason to believe that, unlike his co-defendants, Elvis had any involvement with the prior robbery.  T 10. Second, Elvis has been convicted only of inchoate offenses – no robbery actually occurred, no one was threatened or harmed, no money was taken.

C. *The Guidelines*

This Court should "consider every convicted person as an individual and every case as a unique study in human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996).  In the advisory

guideline regime, the guideline sentence is only a starting point for arriving at the proper sentence under 18 U.S.C. § 3553(a). *See Gall v. United States*, 552 U.S. 38, 49 (2007). Not only are the Guidelines not mandatory, they are "also not to be *presumed* reasonable." *Nelson v. United States*, 129 S.Ct. 890, 892 (2009).

As correctly calculated in the PSR, the base offense level is 18 under § 2B3.1(a). A 2-level post office enhancement applies under § 2B3.1(b)(1).

The PSR assigns an additional 3 points under § 2B3.1(b)(2)(E) as a bb gun was possessed. PSR ¶ 23. In response to a defense objection, the PSR asserts that the bb gun enhancement is attributable to Mr. Raposo because it was reasonably foreseeable that a co-defendant would carry the bb gun.

While maintaining the objection made to the PSR, Mr. Raposo offers here an independent and additional reason why the Court should not apply this enhancement. The proponent of a specific offense characteristic bears the burden of proving its applicability by a preponderance of the evidence. *See, e.g., United States v. Damon*, 595 F.3d 395, 399 (1st Cir. 2010) ("The Government must show the facts supporting an enhancement by a preponderance of the evidence."). In this case, however, the government has taken the position that a weapon enhancement should not apply. *See* T 12 (government states that it is recommending 30 months, which is the low end of the guidelines as calculated by the government; this corresponds to an offense level of 20-3=17); T 13-15 (government not seeking enhancement as evidence is "mixed" on that issue and government believes 30 months is a fair sentence in any case).

With the three-level reduction for acceptance of responsibility, Mr. Raposo's offense level would be 19. He has no criminal history points at all and, therefore, is in Criminal History

Category I.  This would correspond to a guideline sentencing range of 30-37 months. The government is recommending 30 months under an oral plea agreement.

Mr. Raposo, however, should be granted a downward departure under §5K2.20.  This provision, entitled "Aberrant Behavior," provides for a downward departure "if the defendant committed a single criminal occurrence or single criminal transaction that (1) was committed without significant planning; (2) was of limited duration; and (3) represents a marked deviation by the defendant from an otherwise law-abiding life."  The instant offense fits the first two criteria.  *cf. United States v. Rivera-Rodriguez*, 318 F.3d 268, 275-76 (1st Cir. 2003).  As for the third, until his arrest at age thirty-six, Mr. Raposo had no prior involvement with the criminal justice system.  *See United States v. Jones*, 158 F.3d 492, 499-500 (10th Cir. 1998) (departure warranted where defendant lived a law-abiding life until age thirty-five, when his marriage disintegrated).

Mr. Raposo  is not ineligible for this departure based on any of the circumstances listed in § 5K2.20(c):

(c)PROHIBITIONS BASED ON THE PRESENCE OF CERTAIN CIRCUMSTANCES.—The court may not depart downward pursuant to this policy statement if any of the following circumstances are present:

(1)The offense involved serious bodily injury or death.

(2)The defendant discharged a firearm or otherwise used a firearm or a dangerous weapon.

(3)The instant offense of conviction is a serious drug trafficking offense.

(4)The defendant has either of the following: (A) more than one criminal history point, as determined under Chapter Four (Criminal History and Criminal Livelihood) before application of subsection (b) of §4A1.3 (Departures Based on Inadequacy of Criminal History Category); or (B) a prior federal or state felony conviction, or any other significant prior criminal behavior, regardless of whether

the conviction or significant prior criminal behavior is countable under Chapter
Four.

With respect to the final criterion, Mr. Raposo has no criminal history points. While he
has engaged in prior drug use, such use should not be considered "significant prior criminal
behavior," where the ultimate consideration for the Court under this guideline is an inquiry into
whether the offense conduct at issue in this case is uncharacteristic of the defendant.

Application Note 1 to § 5K2.20 directs the Court also to consider other factors, including
the defendant's mental and emotional conditions, his employment record, and his record of prior
good works.  While drug use cannot excuse criminal conduct, Mr. Raposo's mental condition
was affected by drugs, and he has now taken significant steps to address those effects.  His
employment and good works – from paying his sister's tuition to attentiveness to Jennifer Poor's
children – count in favor of a downward departure.

Viewing the issue holistically, it is apparent that Mr. Raposo is a good man who
committed an abberational and uncharacteristic crime. This Court should depart four levels
downwards to offense level 15, and thus calculate the advisory guideline sentencing range at 18-
24 months.

*D. Protection of the Public and Deterrence*

Mr. Raposo presents an exceptionally low risk of recidivism.  He is almost forty, yet this
is his first criminal conviction.  He has established a good track record of addressing his
substance abuse issues.  His recent employment record is solid, and he has good employment
prospects when released. He has meaningful and deep relationships. He is, despite his actions in
this case, a good and decent person.

Protection of the public does not correlate easily with sentence length in a case such as this: The goal here is obviously not to incapacitate Mr. Raposo indefinitely.  Given the low risk of recidivism posed by Elvis, the public would be better protected if he is released while his employment, treatment, and personal ties are intact, rather than if he is incarcerated longer, weakening those ties.

An eighteen month sentence is more than sufficient to deter Elvis.  In fact, he has already committed to change, as demonstrated by his successful post-offense treatment and employment efforts.

III. Conclusion

Ultimately, the various factors do not, of course, readily reduce to a sentence length that is susceptible to formulaic computation.  The government's sentencing recommendation of 30 months, corresponding to a guidelines calculation on which the parties agree, except for the aberrant behavior departure, is a generically appropriate *baseline*. In this case, however, the sentence should be further individualized considering the exceptionally low risk of recidivism posed by Mr. Raposo, his record of helping others, and his successful efforts in addressing his substance abuse issues. Even if the Court concludes that the aberrant behavior guidelin does not apply, the arguments made here warrant a non-guideline *Booker* sentence.  Incarceration for 18 months, followed by two years of supervised release is a fair and just sentence.

Elvis Raposo,

By his attorney,


*/s/ Behzad Mirhashem*
Behzad Mirhashem
  N.H.  Bar  #10031
Federal Defender Office
51 Sleeper Street, 5th Floor
Boston, MA  02210
Tel: 617-223-8061


## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)

and paper copies will be sent to those indicated as non registered participants on September 15,

2011.


*/s/ Behzad Mirhashem*
Behzad Mirhashem